1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ABRAHAM E. BANKS,                         No. CIV S-07-0940-WBS-CMK-P

12                 Plaintiff,

13         vs.                                  <u>FINDINGS AND RECOMMENDATIONS</u>

14   RICHARD TAN, et al.,

15                 Defendants.

16   _____/

17             Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.   Pending before the court are defendants' motions for summary judgment

19   (Docs. 28 and 29).

20

21                              **I.  BACKGROUND**

22             This action proceeds on plaintiff's original complaint.  Service was found to be

23   appropriate for defendants Tan, Blanks, Young, Phillip, Lee, Marlow, James, and Rohlfing.

24   Defendants Tan, Blanks, Young, Marlow, and James appeared in the action by way of their

25   answer to the complaint.  Defendant Rohlfing appeared by way of a separate answer.  Defendants

26   Phillip and Lee have been dismissed for failure to effect timely service of process as required by

Federal Rule of Civil Procedure 4(m).

Based on testimony plaintiff gave at his deposition, his claims in this case are based solely on alleged deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.  According to defendants, the following facts are not in dispute:[1]

1.     During his incarceration at the Sacramento County Jail, plaintiff sustained injuries during a riot in June 2003;

2.     Plaintiff's injuries consisted of a fracture of the fourth metacarpal bone in the right hand;

3.     Plaintiff was taken to the hospital where he was treated by an orthopedic specialist, x-rays were taken, and a cast was placed on plaintiff's right hand;

4.     Plaintiff was transferred to Deuel Vocational Institute ("DVI") on July 10, 2003;

5.     Upon his arrival at DVI, plaintiff was medically screened by defendant Blanks, a registered nurse;

6.     As part of the screening process, defendant Blanks reviewed plaintiff's medical records and a form entitled "Confidential Medical/Mental Health Transfer";

7.     The "Confidential Medical/Mental Health Transfer" form indicated that plaintiff was receiving Motrin tablets, 800 mg, one tablet twice daily, but that plaintiff did not need immediate medical attention;

8.     Defendant Blanks noted during the screening process that plaintiff had fractured his right hand two weeks earlier;

9.     Defendant Blanks authorized plaintiff to go to the medical clinic at DVI for further evaluation and possible replacement of his cast, which had been removed as part of the transfer process;

10.    Defendant Blanks had no other contact with plaintiff;

11.    Plaintiff was seen by defendant Young, a registered nurse at DVI, on July 14, 2003;

/ / /

/ / /

---

[1]     Defendants cite their declarations, plaintiff's complaint, and portions of the transcript of plaintiff's deposition in support of their statements of undisputed facts.

2

12.	At the time he was seen by defendant Young, plaintiff denied having any medical problems other than his right hand injury and defendant Young noted that plaintiff had tested negative for tuberculosis and, for this reason, did not require a chest x-ray;

13.	Defendant Young had no other contact with plaintiff;

14.	After seeing defendant Young, plaintiff was seen by a prison doctor who ordered that another x-ray of the right hand be taken and that plaintiff be provided Ibuprofen;

15.	On July 18, 2003, plaintiff reported to the medical clinic at DVI and stated that the x-ray ordered on July 14th had never been taken;

16.	Plaintiff was seen by a doctor who noted swelling of the right hand, but no bruising;

17.	Plaintiff was then taken to radiology and an x-ray of the right hand was taken which indicated "comminuted fracture mid-right fourth metacarpal, slight dorsal angulation";

18.	Plaintiff was seen again by a doctor at DVI on July 29, 2003;

19.	At this visit, the doctor noted that plaintiff was not in acute distress, that his right hand was tender and showed a "dorsum bony prominence" along the fourth metacarpal bone;

20.	The doctor ordered an orthopedic consult, prescribed Motrin, and applied a splint to the right hand until plaintiff could be seen by the orthopedic specialist;

21.	An appointment was made for plaintiff to see an orthopedic specialist at Doctors Hospital of Manteca on September 15, 2003, which was the earliest available date;

22.	Plaintiff was seen again at the DVI medical clinic on July 30, 2003, at which time the doctor noted that plaintiff had full range of motion in his right hand;

23.	On August 28, 2003, and again on September 3, 2003, defendant Tan, the Chief Medical Officer at DVI, approved plaintiff's transport to Doctors Hospital of Manteca for the orthopedic consult;

24.	Defendant Tan never directly provided medical treatment to plaintiff and had no other contact with plaintiff;

25.	Plaintiff was transferred to High Desert State Prison ("HDSP") on September 8, 2003;

/ / /

3

26.  Upon his arrival at HDSP, plaintiff was seen by defendant Marlow, a registered nurse, as part of the initial screening process for newly arriving inmates;

27.  During this screening, defendant Marlow interviewed plaintiff and reviewed his medical file;

28.  Defendant Marlow noted that plaintiff complained of a "lump to right hand (due to fracture. . .)", that x-rays had been taken at DVI, and that plaintiff had been scheduled to see an orthopedic specialist;

29.  Defendant Marlow obtained an order from a doctor at HDSP for plaintiff to be referred to the medical clinic within two weeks for evaluation of his right hand;

30.  Defendant Marlow had no other contact with plaintiff;

31.  Plaintiff was seen by defendant James, a doctor at HDSP, on February 10, 2004, pursuant to plaintiff's request submitted on January 31, 2004;

32.  Defendant James observed "good right-hand grip, assessed "old healed right fourth metacarpal fracture – with minimal deformity," and determined that plaintiff did not require any further treatment for his right hand injury;

33.  Based on his findings, it was defendant James' opinion that additional x-rays were not needed;

34.  In response to plaintiff's inmate appeal of this decision, defendant Rohlfing, an orthopedic surgeon at HDSP, ordered new x-rays be taken and that plaintiff be brought to the orthopedic clinic for evaluation;

35.  Additional x-rays were taken on April 1, 2004, which revealed "[i]nterval healing of the 4th metacarpal fracture" with Volar angulation present;

36.  Defendant Rohlfing examined plaintiff on April 20, 2004, at which time plaintiff's right hand showed full range of motion and good strength;

37.  Defendant Rohlfing concluded that the metacarpal fracture had healed with only marginal deformity and that the hand was "quite good functionally"; and

38.  In defendant Rohlfing's opinion, surgery was not required.

There is no evidence that plaintiff was ever seen at the HDSP medical clinic within two weeks of his initial screening on September 8, 2003, as ordered by the prison doctor. Defendant Marlow states that it was her custom and practice to place such orders in an envelope and immediately send them to the medical clinic, but does not state that she did so in this case. Defendant does

4

state, however, that she never intentionally delayed or denied plaintiff access to medical

treatment.  It also appears that plaintiff was never seen at Doctors Hospital of Manteca.

> Plaintiff has not offered any evidence to put any of these facts in dispute.


## II.  STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other

facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

whatever is before the district court demonstrates that the standard for entry of summary

judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

/ / /

/ / /

/ / /

1    If the moving party meets its initial responsibility, the burden then shifts to the

2    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4    establish the existence of this factual dispute, the opposing party may not rely upon the

5    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

6    form of affidavits, and/or admissible discovery material, in support of its contention that the

7    dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

8    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

9    of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

10   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

11   that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

12   for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

13   In the endeavor to establish the existence of a factual dispute, the opposing party

14   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

15   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

16   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

17   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

18   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

19   committee's note on 1963 amendments).

20   In resolving the summary judgment motion, the court examines the pleadings,

21   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

22   any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See

23   Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

24   before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

25   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

26   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

1   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

2   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

3   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

4   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

5   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

6

7                                    **III.  DISCUSSION**

8                  Defendants argue, among other things, that they are entitled to judgment as a

9   matter of law because plaintiff cannot established that they were deliberately indifferent to his

10  medical needs.  The treatment a prisoner receives in prison and the conditions under which the

11  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

12  and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

13  511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

14  of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

15  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

16  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

17  "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

18  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

19  when two requirements are met: (1) objectively, the official's act or omission must be so serious

20  such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

21  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

22  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

23  official must have a "sufficiently culpable mind."  See id.

24  / / /

25  / / /

26  / / /

7

1         Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

2    injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

3    105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

4    health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

5    sufficiently serious if the failure to treat a prisoner's condition could result in further significant

6    injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d

7    1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

8    Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

9    is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

10    activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

11    Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

12         The requirement of deliberate indifference is less stringent in medical needs cases

13    than in other Eighth Amendment contexts because the responsibility to provide inmates with

14    medical care does not generally conflict with competing penological concerns.  See McGuckin,

15    974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

16    decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

17    1989).  The complete denial of medical attention may constitute deliberate indifference.  See

18    Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

19    treatment, or interference with medical treatment, may also constitute deliberate indifference.

20    See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

21    demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

22         Negligence in diagnosing or treating a medical condition does not, however, give

23    rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

24    difference of opinion between the prisoner and medical providers concerning the appropriate

25    course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

26    90 F.3d 330, 332 (9th Cir. 1996).

### A.   Defendant Blanks

According to the undisputed evidence, plaintiff was medically screened by defendant Blanks upon plaintiff's arrival at DVI on July 10, 2003.  As part of this process, defendant Blanks reviewed plaintiff's medical records and noted that plaintiff was taking medication to treat a recent injury to his right hand.  Defendant Blanks authorized plaintiff to go to the medical clinic for further evaluation and possible replacement of his cast, which had been removed when he was transferred.  Defendant Blanks had no other contact with plaintiff.  Given these facts, plaintiff cannot establish deliberate indifference because it is clear that defendant Blanks did not ignore his right hand injury.  To the contrary, he noted the injury and authorized further evaluation by a doctor.  Defendant Blanks is entitled to summary judgment.

### B.   Defendant Young

The undisputed evidence submitted by defendants establishes that plaintiff was seen by defendant Young – a registered nurse – as a result of the referral for further treatment authorized by defendant Blanks.  Defendant Young's evaluation occurred on July 14, 2003.  At that time, plaintiff denied any medical problems other than the right hand injury.  Defendant Young had no further contact with plaintiff.  Again, these facts show that defendant Young was not indifferent to plaintiff's hand injury.  While defendant Young did not provide any specific treatment, such was not this defendant's job.  As a nurse, defendant Young was responsible for triage, which was done.  After contact with defendant Young, plaintiff was immediately seen by a prison doctor, who ordered another x-ray of the hand and provided medication.  The court finds that defendant Young is also entitled to summary judgment.

### C.   Defendant Tan

After plaintiff was seen by defendant Young and a prison doctor on July 14, 2003, plaintiff was seen by other prison doctors on July 18, 2003, July 29, 2003, and July 30, 2003. The x-ray ordered on July 14, 2003, was taken and plaintiff was authorized for an outside orthopedic consultation to take place on September 15, 2003.  Defendant Tan – the Chief

1  Medical Officer at DVI – approved plaintiff's transport to Doctors Hospital of Manteca for the

2  outside consultation.[2]  Defendant Tan never directly provided treatment to plaintiff and had no

3  other contact with him.  These facts are undisputed.  Again, as with defendants Blanks and

4  Young, the undisputed facts show that defendant Tan was not indifferent.  In response to

5  plaintiff's medical need, defendant Tan approved his transport to an outside hospital for an

6  orthopedic consultation.  Defendant Tan is also entitled to summary judgment.

7         **D.**     **Defendant Marlow**

8         The undisputed facts show that plaintiff was evaluated by defendant Marlow as

9  part of the initial screening process upon plaintiff's arrival at HDSP on September 8, 2003.

10  Defendant Marlow interviewed plaintiff and reviewed his medical file, just as defendant Blanks

11  did when plaintiff first arrived at DVI.  Defendant Marlow noted that plaintiff complained of a

12  "lump" in his right hand due to a fracture and that x-rays had been taken at DVI.  Defendant

13  Marlow also noted that plaintiff had been approved for an outside orthopedic consultation.

14  Defendant Marlow obtained an order from a doctor at HDSP for plaintiff to be referred to the

15  medical clinic within two weeks for further evaluation.  Defendant Marlow had no further

16  contact with plaintiff.  These facts show that defendant Marlow was not indifferent to plaintiff's

17  hand injury because the defendant obtained approval for further evaluation by a doctor within a

18  reasonable period of time.[3]  Plaintiff cannot establish that defendant Marlow violated his Eighth

19  Amendment rights.

20  / / /

21  / / /

22  / / /

23

24         [2]     It appears that plaintiff never obtained the outside consultation.  Plaintiff has not provided any evidence to suggest that this was due to the conduct of any of the defendants.

25         [3]     While this evaluation apparently did not occur within two weeks of the September
26  8th screening by defendant Marlow, there is no evidence to suggest that any delay was due to the conduct of any defendant.

1          **E.     Defendant James**

2                   The evidence establishes that plaintiff was next seen by defendant James – a

3    doctor at HDSP – on February 10, 2004, pursuant to a request submitted by plaintiff on January

4    31, 2004.  Defendant James examined plaintiff and observed good grip strength in the right hand

5    and assessed a healed fourth metacarpal fracture with minimal deformity.  Defendant James

6    concluded that plaintiff did not require any further medical attention.  These facts are not in

7    dispute and show that, contrary to plaintiff's allegation, defendant James provided medical

8    treatment.  Therefore, plaintiff cannot establish that defendant James was deliberately indifferent

9    to a serious medical need.  At best, plaintiff's claim against defendant James is based on

10   plaintiff's disagreement with defendant James' opinion that the hand injury was healed and

11   required no further treatment.

12         **F.     Defendant Rohlfing**

13                  According to the undisputed evidence submitted by defendants, defendant

14   Rohlfing ordered new x-rays taken of plaintiff's right hand in response to plaintiff's inmate

15   appeal of defendant James' decision that no further treatment was required.  Additional x-rays

16   were taken on April 1, 2004, and plaintiff was examined by defendant Rohlfing on April 20,

17   2004.  At that time, defendant Rohlfing observed that plaintiff's right hand demonstrated good

18   strength and full range of motion.  Based on his observations, defendant Rohlfing concluded that

19   plaintiff's metacarpal fracture had healed and that, in his medical opinion, further treatment was

20   not required.  Defendant Rohlfing had no other contact with plaintiff.  Based on these facts, it is

21   clear that defendant Rohlfing provided medical treatment to plaintiff.  Therefore, plaintiff cannot

22   establish deliberate indifference.  Plaintiff's claim, at best, is based on a difference of medical

23   opinion.  Defendant Rohlfing is entitled to summary judgment on this basis.

24   / / /

25   / / /

26   / / /

11

1    Defendant also argues that he is entitled to qualified immunity.  Government

2    officials enjoy qualified immunity from civil damages unless their conduct violates "clearly

3    established statutory or constitutional rights of which a reasonable person would have known."

4    Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general, qualified immunity protects "all but

5    the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S.

6    335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether,

7    taken in the light most favorable to the party asserting the injury, the facts alleged show the

8    defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201

9    (2001).  If, and only if, a violation can be made out, the next step is to ask whether the right was

10   clearly established.  See id.  This inquiry "must be undertaken in light of the specific context of

11   the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is alleged to have

12   violated must have been 'clearly established' in a more particularized, and hence more relevant,

13   sense:  The contours of the right must be sufficiently clear that a reasonable official would

14   understand that what he is doing violates that right."  Id. at 202 (citation omitted).  Thus, the final

15   step in the analysis is to determine whether a reasonable officer in similar circumstances would

16   have thought his conduct violated the alleged right.  See id. at 205.

17   When identifying the right allegedly violated, the court must define the right more

18   narrowly than the constitutional provision guaranteeing the right, but more broadly than the

19   factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667

20   (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be

21   sufficiently clear that a reasonable official would understand [that] what [the official] is doing

22   violates the right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the

23   court concludes that a right was clearly established, an officer is not entitled to qualified

24   immunity because a reasonably competent public official is charged with knowing the law

25   governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even

26   if the plaintiff has alleged a violation of a clearly established right, the government official is

12

1    entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that

2    his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th

3    Cir. 2001); see also Saucier, 533 U.S. at 205.

4            The first two steps in the qualified immunity analysis involve purely legal

5    questions.  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a

6    legal determination based on a prior factual finding as to the government official's conduct.  See

7    Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  In resolving these issues, the court must

8    view the evidence in the light most favorable to plaintiff and resolve all material factual disputes

9    in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

10           In this case, the court finds that plaintiff has a clearly established constitutional

11   right under the Eighth Amendment.  As discussed above, however, that right was not violated by

12   defendant Rohlfing because he provided adequate medical treatment for plaintiff's right hand

13   injury and was not deliberately indifferent.  Therefore, defendant Rohlfing is also entitled to

14   summary judgment based on qualified immunity.

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

1

**IV.  CONCLUSION**

2          Based on the foregoing, the undersigned recommends that defendants' motions for

3  summary judgment (Docs. 28 and 29) be granted.

4          These findings and recommendations are submitted to the United States District

5  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

6  after being served with these findings and recommendations, any party may file written

7  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

8  Findings and Recommendations."  Failure to file objections within the specified time may waive

9  the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11    DATED:   February 6, 2009

12                                                _____

13                                                **CRAIG M. KELLISON**
                                                  UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26